# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Sidney I. Schenkier | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 277 | **DATE** | 11/4/2002 |
| **CASE TITLE** | John McGee and Thomas Malone vs. IL Dept. of Transportation, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION AND ORDER.** Defendants' motion to dismiss plaintiffs' complaint [Doc. # 18-1] is granted in part and denied in part.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | NOV 0 5 2002 date docketed | 27 |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 11/5/2002 | |
| JJK courtroom deputy's initials | | date mailed notice JJK | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JOHN McGEE and THOMAS MALONE, ) | DOCKETED |
| ) | |
| Plaintiffs, ) | NOV 0 5 2002 |
| ) | |
| vs. ) | No. 02 C 0277 |
| ) | |
| ILLINOIS DEPARTMENT OF ) | Magistrate Judge Sidney I. Schenkier |
| TRANSPORTATION, KENNETH S. ) | |
| CHLEBICKI, DENNIS A. MAHONEY and ) | |
| JOHN KOS, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER[1]

The defendants[2] have filed a motion to dismiss plaintiffs'[3] four count complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Counts I and II assert claims of race discrimination and retaliation against all defendants under 42 U.S.C. §§ 1981 and 1983, respectively. Counts III and IV assert Title VII claims of race discrimination and retaliation against IDOT alone. All defendants have moved under Rule 12(b)(1) to dismiss the entire complaint as a result of the Consent Decree entered by this Court in *Massie v. IDOT,* 96 C 4830 ("*Massie* Decree" or "Decree"), under two theories: (1) that the Decree provides the exclusive remedy for the conduct challenged in this complaint, and thus bars this action (Defs.' Mem. at 6-8); and (2) in the

---

[1] On May 22, 2002, pursuant to 28 U.S.C. § 636(c), the parties consented to have the case transferred to this Court for all proceedings, including the entry of final judgment (doc. ## 21, 22). On June 18, 2002, the case was reassigned to this Court (doc. # 23).

[2] The named defendants are: Kenneth Chlebicki, Yard Technician in the Stevenson Yard (Compl. ¶ 8); Dennis Mahoney, Yard Technician in the Kennedy Yard (Compl. ¶ 9); John Kos, District Engineer for District 1 (Compl. ¶ 10); and the Illinois Department of Transportation ("IDOT") (Compl. ¶ 6).

[3] The named plaintiffs are: John McGee, Lead Worker in the Stevenson Yard (Compl. ¶ 4), and Thomas Malone; Heavy Construction Equipment Operator in the Kennedy yard (Compl. ¶ 5).



alternative, that the complaint is "duplicative" of the claims that they previously attempted to raise (and still could raise) under the Decree, and thus should be dismissed as a matter of "wise judicial administration" (Defs.' Mem. at 8).[4]

Alternatively, the defendants have moved to dismiss certain claims from the case. They have moved to dismiss Counts I and II against IDOT under Rule 12(b)(1), on the ground that these claims are barred by the Eleventh Amendment. The defendants have also moved under Rule 12(b)(6) to dismiss Count II, against defendants Chlebicki, Mahoney and Kos in their individual and official capacities.

For the reasons that follow, the defendants' motion to dismiss is granted as to the Section 1981 and 1983 claims against IDOT; in all other respects, the motion is denied.

## II.

We outline the relevant factual and procedural background of the *Massie* case, and then move to the allegations in plaintiffs' complaint.

---

[4]The defendants have attached to their motion to dismiss the *Massie* Decree, as well as various documents related to a claim under the Decree that plaintiffs previously sought to raise (*e.g.*, the motion for rule to show cause filed by plaintiffs, and this Court's order denying that motion as premature). As noted by defendants (Defs. Mem. at 8, n.2), "attaching materials to a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)" normally "converts the motion to a motion for summary judgment," under Fed. R. Civ. P. 56. However, the "district court may also take judicial notice of matters of public record without converting a Rule 12(b)(6) motion into a motion for summary judgment. *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994)." *Henson*, however, only supports the notion that a Rule 12(b)(6) motion may avoid conversion by review of materials outside the pleadings. The defendants have also moved to dismiss under Rule 12(b)(1). The question, therefore, is whether consideration of the Decree, in conjunction with the complaint, converts defendants' motion into one for summary judgment under Rule 56. Although defendants do not finish off this point with respect to their Rule 12(b)(1) motion, we note that "unlike the strict limitations under [Rule] 12(b)(6) against considering matters outside the complaint, a Rule 12(b)(1) motion is considered a speaking motion and can include references to evidence extraneous to the complaint without converting it to a Rule 56 motion." *Wheeler v. Hurdman*, 825 F.2d 257, 259 n.5 (10th Cir. 1987) (internal quotations omitted). *See also Crawford v. United States*, 796 F.2d 924, 928 (7th Cir. 1986) ("the omission . . . of a provision for converting a Rule 12(b)(1) motion into a summary judgment motion . . . was not an oversight").

2

## A.

In 1996, IDOT was sued by a group of African-American workers, on behalf of a class of similarly-situated individuals for race discrimination in violation of Title VII and Sections 1981 and 1983. *Massie v. IDOT*, 96 C 4830 (N.D. Ill.). In late March 2000, his Court met with the parties to mediate a settlement. After several sessions, a settlement was reached, subject to preliminary and final court approval.

Pursuant to consent of all parties (96 C 4830: doc ## 67-69), the *Massie* suit was reassigned to this Court on March 30, 2000 (96 C 4830: doc. # 70). Thereafter, the Court gave preliminary approval to the proposed settlement on April 15, 2000 (96 C 4830: doc. # 72). After class notice was sent and comments were considered, on June 12, 2000 the Court gave final approval to the settlement, and entered the Consent Decree that embodied the settlement (96 C 4830: doc. # 79). Because the outcome of the pending motion to dismiss turns in the first instance on an interpretation of the terms of the Decree and its scope, we briefly outline certain relevant provisions below.

By its terms, the *Massie* Decree has three purposes: to ensure that class members "are afforded equal opportunity for promotions regardless of race and/or color"; to provide "injunctive and monetary relief for class members"; and "[t]o avoid further protracted and costly litigation" (Decree, Section II, at 2). However, in the Decree the parties agreed that neither IDOT nor its employees admitted any of the claims of "wrongdoing or discrimination" alleged in the *Massie* case (Decree, Section X, Subparts A-C, at 25).

In line with these stated purposes, the Decree provided monetary relief for class members (Decree, Sections VI and VII), as well as injunctive relief (Decree, Section VIII). As part of the injunctive relief, the Decree requires that class members who receive promotions into certain job

3

positions under the procedures in the Decree receive treatment and training equal to that received by other employees who hold those job positions (Decree, Section VIII, Subparts D(10)-D(11), at 17-18). The Decree further contains provisions enjoining the individual defendants, IDOT, its management personnel, agents "and all those in active concert or participation with them" from retaliating against class members because they complained about discrimination; filed charges or lawsuits on that subject; were identified as a plaintiff or possible witness in the *Massie* case; and asserted rights or received relief under the Decree (Decree, Section VIII, Subpart D(12), at 18).

The Decree also contains a section entitled "Compliance Provisions," which includes the appointment of a "Civil Rights Monitor" to oversee implementation of the non-monetary relief, to oversee the investigation of complaints about – among other things – "racial and race-based harassment and related retaliation complaints . . . concerning any promotions under the decree" and to seek the appropriate remedies for them (Decree, Section IX, Subparts E(1)-(2), at 23). The Decree sets forth a procedure for investigating such complaints; for the Class Monitor and IDOT to resolve the complaint without court action; and in the event that cannot be done, for the Class Monitor to "bring the matter to the Court for resolution" (Decree, Section IX, Subparts E(4)-(6), at 23-24).

The Decree vests in this Court "continued and exclusive jurisdiction over . . . enforcement, construction and interpretation of this settlement" (Decree, Section VIII, Subpart C(4), at 30). By its terms, the Decree will remain in effect for three years after it becomes final or when all relief under it is implemented, whichever is later – unless extended by court order (Decree, Section IV, Subparts B(3)-(4), at 6).

**B.**

On June 15, 2001, the Class Monitor filed a motion for rule to show cause why IDOT and certain other individuals should not be held in contempt for violating the equal treatment, equal training and non-retaliation provisions of the *Massie* Decree (96 C 4830: doc. # 85). The Class Monitor brought the motion on behalf of the *Massie* class and four class members in particular – two of whom (Messrs. McGee and Malone) are plaintiffs in this case. The motion recited discrimination, harassment and retaliation that Messrs. McGee and Malone claimed they had experienced (Pls.' Rule to Show Cause Mtn. ¶ 1-2). The Class Monitor asked for a contempt finding against IDOT and a number of individuals, including the three individual defendants in this case. On June 21, 2001, the Court denied plaintiffs' motion as premature, because the Class Monitor had not yet exhausted all efforts at resolution of the alleged disputes with IDOT's Civil Rights Committee (96 C 4830: doc. # 86). The Court's denial of the motion was without prejudice, and the Court ordered the parties to submit a proposed schedule for investigating and attempting to resolve the complaints raised by the Class Monitor. Pursuant to the proposals submitted by the parties, on July 5, 2001 the Court entered a schedule to govern that investigation and conciliation process. After that process was completed, a renewed contempt motion could be filed.

**C.**

The Class Monitor never filed a renewed contempt motion on behalf of Messrs. McGee or Malone, or any other member of the *Massie* class. Rather, on January 11, 2002, the lawyers representing the *Massie* class – one of whom also is the Class Monitor – filed the instant lawsuit. The allegations in this complaint, which we assume as true for purposes of this motion, *Lucien v. Preiner*, 967 F.2d 1166, 1168 (7th Cir. 1992), are as follows.

The plaintiffs allege that pursuant to the Decree, the two plaintiffs in this action were promoted and took part in implementing other aspects of the Decree. Specifically, Mr. McGee was promoted to lead worker on October 5, 2000, while Mr. Malone was promoted to the position of Heavy Construction Equipment Operator ("HCEO") on September 16, 2000 (Compl. ¶¶ 14, 21). Mr. McGee is the only African-American in a supervisory position in the yard and one of only two African-American permanent employees in the yard (Compl. ¶ 14). Since the first day of their promotions, both Mr. McGee and Mr. Malone have experienced hostility, harassment, and retaliation from IDOT and Mr. Chlebicki (in the case of Mr. McGee) and IDOT and Mr. Mahoney (in the case of Mr. Malone) (Compl. ¶¶ 14, 21).

For example, Mr. McGee alleges he has been treated differently than other lead workers and has been prevented from performing the duties of his position because of his race and his participation in the *Massie* Decree (Compl. ¶ 15). Mr. McGee claims he reported the harassment, discrimination and retaliation to the defendants in writing and on numerous occasions (Compl. ¶ 18), with no correction of the problem, but only further incidents of retaliation (Compl. ¶¶ 18-19). Similarly, Mr. Malone alleges that he has been treated differently than other HCEOs and has been prevented from performing the duties of his position because of his race and his participation in the *Massie* Decree (Compl. ¶¶ 21-22). Mr. Malone alleges he has been subjected to racial slurs (Compl. ¶ 26), and that when he reported these complaints in writing and orally, there was no corrective action taken, but instead, he was subjected to further retaliatory and discriminatory actions.

The conduct alleged in the complaint tracks – although in more summary form – the conduct alleged in the motion for rule to show cause. For relief, the plaintiffs here seek certain injunctive

relief as well as actual, compensatory and punitive damages; costs and attorneys' fees; and a jury trial.

### III.

We turn now to the arguments made with regard to the pending motion to dismiss. At the threshold, we note that the parties agree on one point: the plaintiffs' Section 1981 and 1983 claims against IDOT must be dismissed with prejudice because they are barred by the Eleventh Amendment (Defs.' Mem. at 4-5; Pls.' Mem. at 5). Under the Eleventh Amendment, a state and its agencies are immune from private suits seeking damages or injunctive relief in federal court unless the state or Congress by express and unequivocal language waives the state's Eleventh Amendment immunity. *Kroll v. Board of Trustees Univ. of Ill.*, 934 F.2d 904, 907 (7th Cir. 1991). IDOT is a state agency of Illinois, and it is protected by the Eleventh Amendment insofar as the state of Illinois is protected. Illinois has not waived its Eleventh Amendment immunity. 745 ILL. COMP. STAT. 5/1 (1996). And, Congress has not expressly conveyed an unequivocal intent to abrogate the state's immunity under Sections 1981 and 1983. *Perkins v. Board of Trustees of University of Ill.*, 1996 WL 308292, at *1 (N.D. Ill. 1996) (Section 1981); *Rodenbeck v. State of Ind., Leaking Underground Storage Tank Div. of Dept. of Environ. Mgmt.*, 742 F. Supp. 1442, 1445 (N.D. Ind. 1990) (Section 1983). Moreover, states and state agencies that have not waived immunity are not subject to private lawsuits for money damages. *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *Gleason v. Bd. of Educ.*, 792 F.2d 76, 79 (7th Cir. 1986). Consequently, the Court will dismiss plaintiffs' Section 1981 and 1983 claims against IDOT with prejudice.

Of course, plaintiffs' Sections 1981 and 1983 claims against the individual defendants in their individual capacities are not barred by the Eleventh Amendment. "Personal-capacity suits raise no Eleventh Amendment issues even though an official might have the requisite nexus to the state in order for his or her actions to be labeled state action." *Kroll*, 934 F.2d at 907. Furthermore, the plaintiffs may not be barred by the Eleventh Amendment against maintaining actions against the individual defendants in their official capacities for prospective relief ("*i.e.*, an injunction, or declaratory judgment and monetary damages that are 'ancillary' to either."). *Id.* at 908. Thus, we now consider in turn the other arguments raised by the defendants: (a) that the complaint should be dismissed in its entirety because plaintiffs must proceed, if at all, under the Decree; and (b) that in any event, the Section 1981 and 1983 claims fail to state a claim for relief.

## IV.

The defendants' primary argument is that the plaintiffs' entire complaint should be dismissed because the claims fall within the scope of the *Massie* Decree and are therefore subject only to the remedy of contempt for violation of the Decree (Defs.' Mem. at 6-7; Defs.' Reply at 2-5). The defendants' consent decree argument is based on two separate theories. The first theory is that the Decree provides the exclusive remedy for any matters falling within its purview, and thus bars this lawsuit. To support this proposition, the defendants rely on *United States v. City of Northlake*, 942 F.2d 1164, 1167-68 (7th Cir. 1991). Defendants' second theory is that the plaintiffs' new complaint is barred because it is "duplicative" of the claims raised in the earlier motion for rule to show cause. For this argument, the defendants rely principally on *Serlin v. Arthur Andersen & Co.*, 3 F.3d 221 (7th Cir. 1993). For the reasons set forth below, we do not find either argument persuasive.

**A.**

An essential prerequisite to defendants' argument is that the conduct challenged in this lawsuit is conduct that fall within the scope of the Decree, and thus could be remedied through a successful contempt proceeding brought under the Decree. The plaintiffs do not contend that this prerequisite is not met – and could not credibly do so. The allegations of discrimination, harassment and retaliation set forth in the compliant parallel those that were alleged on behalf of Mr. McGee and Mr. Malone in the motion for rule to show cause filed in June 2001, and are within the scope of the Decree's requirements of equal treatment, equal training, and non-retaliation. The Court previously dismissed the motion for rule to show cause not because the alleged conduct fell outside the scope of the decree, but because the Court found the motion premature prior to completion of the investigation and conciliation process set forth in the Decree. Thus, the Court concludes that the conduct challenged in this complaint falls within the scope of the *Massie* Decree.

However, while this is an essential prerequisite to defendants' argument, it is not the sole prerequisite. Defendants must show that the Decree not only provides *a* remedy for the conduct alleged in this complaint, but that it provides the *exclusive* remedy for that challenge. In order to establish this point, the defendants must show that the Decree provides the exclusive remedy either because that is what the parties intended, or because that is what the law requires. For the reasons set forth below, the defendants have failed to establish either of these points.

**1.**

In determining what the parties to the Decree intended, the Court is mindful that a judicially-approved consent decree, like a settlement agreement, is essentially a contract for purposes of construction. *United States v. City of Northlake*, 942 F.2d 1164, 1167 (7th Cir. 1991). An expression

of the parties' will is the "contractual aspect of a consent decree." *Kasper v. Board of Election Comm'rs*, 814 F.2d 332, 338 (7th Cir. 1987). Where a dispute arises regarding the scope of the consent decree and a court is presented with the task of interpreting the provisions of a consent decree," the "fundamental principles of contract interpretation under relevant state law apply" and "the enforcing court will look to the plain language of the written agreement as the best expression of the parties' intent." *City of Northlake*, 942 F.2d at 1167. Where the language of the consent decree is unambiguous, then the inquiry is over. *Id.* Where the language is ambiguous, "then parol or other extrinsic evidence must be considered in order to reconstruct the intent of the parties at the time they entered into the agreement." *Id.*

In this case, a close reading of the contractual language in the *Massie* Decree reveals that there is no language that reflects an intent by the parties to settle claims, or resolve with any finality, issues – legal or factual – other than those contained in the original pleadings of the *Massie* case. There is also no language that makes the Decree's remedial provisions the "exclusive remedy" for any future violations that arise under or are related to the subject matter of the Decree (*i.e.*, claims based on race discrimination, harassment and retaliation). Nor is there any language delineating what remedies the Court can provide to the plaintiffs in the event it finds a violation of the Decree.

That is not to suggest that the Court would lack the authority to provide a remedy upon a proper showing that the Decree was violated. The Court's civil contempt power rests in its inherent authority to enforce compliance with its orders. *Jones v. Lincoln Electric Co.*, 188 F.3d 709, 737 (7th Cir. 1999). The Court's equitable powers in civil contempt cases is broad, *Spallone v. United States*, 493 U.S. 265, 276 (1990), and includes the authority to impose monetary sanctions to compensate the victim of the contemnor's noncompliance, *International Union of United Mine*

*Workers of America, Connolly v. J.T. Ventures,* 851 F.2d 930, 932 (7th Cir. 1988), or to coerce compliance with a court order. *Bagwell, id.*; *Grove Fresh Distributing, Inc. v. John LaBatt, Ltd.* 888 F. Supp. 1427, 1435 (N.D. Ill. 1995), *affirmed* 134 F.3d 374 (7th Cir. 1998). In addition, as part of the compensatory relief awarded, the Court may include a grant of attorneys' fees and costs for preparing and prosecuting a contempt petition. *Grove Fresh,* 888 F. Supp. at 1436.

That having been said, the Court's civil contempt authority provides a different panoply of rights and remedies to an allegedly aggrieved person than does filing a separate lawsuit under Title VII, or Sections 1981 or 1983. For example, the plaintiffs' burden of proof in a civil rights action is generally proof by a preponderance of the evidence, *Herman & MacLean v. Huddleston,* 459 U.S. 375, 390 (1983), whereas a Court may impose civil contempt sanctions only upon proof by clear and convincing evidence. *United States v. McDahl,* 257 F.3d 694, 699 (7th Cir. 2001). A plaintiff in a Title VII, Section 1981 or Section 1983 action has the right to a jury trial on liability and most damage issues (with backpay in a Title VII case remaining a question for the Court). *Artis v. Hitachi Zosen Clearing, Inc.,* 967 F.2d 1132, 1135 (7th Cir. 1992) (Title VII); *City of Monterey v. Del Monte Dunes at Monterey, Ltd.,* 526 U.S. 687, 708-09 (1999) (Section 1983); *Huey v. United Parcel Service, Inc.,* 165 F.3d 1084, 1085-86 (7th Cir. 1999) (Section 1981). By contrast, there is no right to a jury trial on a claim for civil contempt. And the remedies available under the federal civil rights laws and the Court's civil contempt authority differ in a number of ways, with one significant difference being that punitive damages are available for violations of Title VII, Section 1981 and Section 1983 *E.E.O.C. v. Indiana Bell Telephone Co.,* 256 F.3d 516, 527 (7th Cir. 2001) (jury may award punitive damages in a Title VII case); *City of New Port v. Fact Concerts, Inc.,* 453 U.S. 247, 269-70 (1981) (general rule prohibiting punitive damages against municipalities is not absolute and

such damages may be available against public officials in their individual capacities) (Section 1983); *E.E.O.C. v. Foster Wheeler Contractors, Inc.*, Nos. 98 C 1601, 98 C 3217, 2002 WL 976618, * 11 (N.D. Ill., March 28, 2002) (Section 1981); whereas, a court in a civil contempt proceeding may impose sanctions only to redress harm that has been caused or to secure compliance with its orders – and not for punitive reasons. *See, e.g., South Suburban Housing Center v. Barry*, 186 F.3d 851, 854 (7th Cir. 1999); *In the matter of Maurice*, 73 F.3d 124, 127, 128 (7th Cir. 1995); *Connolly v. J.T. Ventures*, 851 F.2d 930, 933.

These significant differences in the rights, procedures, and remedies available under Title VII, Section 1981, and Section 1983 on the one hand, and the Court's civil contempt authority on the other hand, fortify the Court in its conclusion that the plaintiffs did not intend to make the *Massie* Decree their sole exclusive remedy for future alleged misconduct merely by failing to state that it is not. The Court finds that if the parties had intended to make the Decree the sole exclusive remedy, that would have been plainly stated in the Decree. The Court concludes that, as a matter of the intent of the contracting parties, the Decree does not foreclose this lawsuit.

2.

We now consider whether, even though the parties did not intend the Decree to provide the exclusive remedy, that is the result that flows by operation of law. As indicated above, in support of this argument, the defendants rely on language taken from the *Northlake* decision, which states that "a consent decree's value lies not in the steps to be taken immediately by the defendant to remedy discrimination, but in the promise that the plaintiff in a case like this one can look to the courts to hold the defendant in contempt *for ongoing and future violations*." *Northlake*, 942 F.2d at 1169 (emphasis added). From this language, the defendants ask us to conclude that a consent

12

decree, by its very nature, operates to preempt the field with respect future violations occurring between the parties that involve the same legal claims covered by the Decree (Defs.' Reply at 3-4). However, we disagree that the *Northlake* decision establishes – or supports – that sweeping proposition.

In *Northlake,* the plaintiff sought to initiate proceedings to enforce a consent decree which prohibited discriminatory hiring practices by the City of Northlake. 942 F.2d at 1165. The district court denied the relief, on the ground that the alleged conduct fell outside the scope of the decree. Thus, the district court held that the plaintiff could raise its claims only by way of a new lawsuit.

On appeal, the Seventh Circuit reversed. The appeals court focused first on the issue of whether the allegations fell within the scope the consent decree, and concluded that they did. *Northlake*, 942 F.2d at 1168. Having reached that conclusion, the Seventh Circuit found no basis to "make the United States file a new lawsuit to remedy allegedly illegal conduct already embraced by a consent decree," as that would create a "disincentive to civil rights plaintiffs contemplating whether or not to enter into such a decree." *Id.* at 1168. The appeals court further noted that much of a consent decree's value "lies not in the steps to be taken immediately by the defendant to remedy discrimination, but in the promise that the plaintiff in a case like this one can look to the courts to hold the defendant in contempt for ongoing and future violations." *Id.* at 1169. The Seventh Circuit reasoned that "[r]equiring the United States to file a new lawsuit to remedy discrimination already comprehended by the plain language of the consent decree undermines the judiciary's role in overseeing the proper implementation of the decree and unnecessarily delays, frustrates and prejudices the plaintiff in its efforts to obtain enforcement." *Id.*

13

*Northlake* thus provides clear governing authority for the proposition that the plaintiffs here could not be *forced* to proceed with their claims by way of a new lawsuit, if they instead desired to institute a proceeding for civil contempt under the Decree. But it is one thing to say that the plaintiffs cannot be forced to proceed by separate lawsuit, and quite another to claim – as do the defendants – that they are forbidden to do so. We read nothing in *Northlake* that requires such a result. Allowing the plaintiffs to proceed in this separate lawsuit would not "serve as a disincentive to the civil rights plaintiffs contemplating whether or not to enter into such a decree." *Northlake*, 942 F.2d at 1168, because it would allow plaintiffs more (not fewer) potential remedies for future alleged misconduct. To the contrary, the result urged by the defendants could provide the very disincentive to entering into consent decrees that the *Northlake* court criticized: making a consent decree the exclusive remedy for future misconduct, even if that is not the expressed intent of the parties, might dissuade plaintiffs from entering into consent decrees (and thus losing future litigation rights). Moreover, while the *Northlake* court noted that a primary value of a consent decree is that it provides a mechanism for plaintiffs to obtain a prompt remedy for future violations by way of a civil contempt proceeding, in this case the plaintiffs have made a conscious decision to forego that benefit and to file instead this separate lawsuit which affords certain rights, procedures and remedies not available in a civil contempt proceeding.

At bottom, we see no reason for the law to weigh in by making the consent decree the exclusive remedy, when the parties to that agreement could have negotiated for that result but did not do so. Accordingly, the Court finds that the Decree does not, by operation of law, bar plaintiffs from pursuing their claims in this separate lawsuit.

14

**B.**

The defendants' alternative theory for dismissing the entire complaint based on the *Massie* Decree is based on the case of *Serlin v. Arthur Andersen & Co.*, 3 F.3d 221 (7th Cir. 1993). The defendants argue that the *Massie* Decree, and this Court's continued exercise of jurisdiction to enforce its terms, creates a pending, parallel action to the present complaint that requires dismissal of the new complaint. The plaintiffs argue that the retention of jurisdiction to enforce the Decree is not sufficient, without an ongoing contempt proceeding, to create a pending, let alone a parallel, action (Pls.' Mem. at 5). We agree with the plaintiffs.

The first question that must be addressed with respect to this theory is whether the exercise of continued jurisdiction over the *Massie* Decree constitutes a "pending action." The Court finds that it does not. We recognize that the parties to the *Massie* Decree are still obligated to adhere to the provisions in the Decree and that this Court retains jurisdiction to ensure compliance with its terms. In this sense, the *Massie* Decree is "pending." But, when the Decree was entered as a final order, litigation was effectively terminated. For the *Serlin* "duplicative litigation" doctrine to apply, the *Massie* Decree would need to be re-opened by initiation of a contempt motion. Such a motion, as indicated, is not pending.

In addition, the *Serlin* Court used the term duplicative litigation to describe cases that were proceeding before two different judges at the same time, concerning the same or overlapping subject matters. 3 F.3d at 224. The problem of different judges hearing the same claim does not exist here: the parties successfully had the present complaint transferred to this Court under the doctrine of relatedness. Moreover, we find it hard to see how the mere existence of the Decree can constitute a duplicative (and parallel) action under *Serlin*, which defined that as a situation where the "claims,

15

parties, and available relief do not significantly differ between the two actions." 3 F.3d at 223. There is no pending motion to enforce the Decree, and thus nothing to compare against the claims, parties and relief sought in the pending lawsuit.

Thus, unless and until the plaintiffs seek to bring a contempt action for the conduct raised in this complaint, we fail to see how this lawsuit can be deemed "duplicative" of anything. Consequently, the Court denies defendants' motion to dismiss Counts I-IV, under Rule 12(b)(1), for lack of subject matter jurisdiction.

## V.

We now turn to the defendants' argument that the Section 1983 claim (Count II) fails to state a claim against individual defendants. "The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits" of the lawsuit. *Triad Assocs., Inc. v. Chicago Housing Auth.*, 892 F.2d 583, 586 (7th Cir. 1990). In determining the sufficiency of the complaint under the "simplified notice pleading" requirement of Fed. R. Civ. P. 8, dismissal is proper if "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). For purposes of reviewing the motion, the court must take all the plaintiff's well-pleaded facts and allegations as true. *Lucien v. Preiner*, 967 F.2d 1166, 1168 (7th Cir. 1992). The Court must also view the plaintiff's allegations in the light most favorable to the plaintiff, *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); the plaintiff is entitled to all reasonable inferences that can be drawn therefrom. *Ellsworth v. Racine*, 774 F.2d 182, 184 (7th Cir. 1985), *cert. denied*, 475 U.S. 1047 (1986). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Triad Assoc., Inc.*, 892 F.2d at 586.

Section 1983 authorizes a federal cause of action based upon the deprivation of civil rights guarantees. *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 618, (1979). Because a claim under Section 1983 does not independently provide any substantive rights, a plaintiff must allege the violation of some other constitutional right or congressional or state statute, regulation or ordinance to state a claim under Section 1983. *Id.* However, only two allegations are necessary to state a cause of action under Section 1983: (1) "the plaintiff must allege that some person has deprived him of a federal right;" and (2) "he must allege that the person who has deprived him of that right acted under color of state or territorial law." *Gomez v. Toledo*, 446 U.S. 635, 640 (1980).

The plaintiffs have satisfied this requirement by alleging race discrimination perpetrated by a state agency and its employees. In their complaint, the plaintiffs' clearly state that upon receiving their promotions they experienced race discrimination, harassment and retaliation because of their race, their participation in the consent decree, and their opposition to the discrimination, harassment, and retaliation that commenced by IDOT officials who were not parties to the *Massie* lawsuit (Compl. ¶¶ 14-22). The plaintiffs' complaint also expressly states that the defendants intentionally violated Section 1983 by the discrimination and retaliation depriving plaintiffs' of their rights under state and federal civil rights laws and the United States Constitution (Compl. ¶ 41). Further, plaintiffs allege that the individual defendants, as supervisory employees of the State of Illinois, and IDOT, as a state agency of Illinois acted under color of state law (Compl. ¶ 41).

The defendants argue that these allegations are insufficient because they fail to give them full and fair notice of the claims and the grounds upon which plaintiffs' claims rest. But the plaintiffs, are only required to include a short and plain statement of the claim showing that the pleader is entitled to relief under the federal notice pleading standards according to Fed. R. Civ. P. 8(a)(2); no

heightened pleading standard applies to Section 1983 cases. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, et al.*, 507 U.S. 163, 168 (1993). *See, also Scott v. City of Chicago*, 195 F.3d 950, 951 (7th Cir. 1999). Under Rule 8(a)(2), a complaint need not set out in detail all of the facts upon which a plaintiff bases his claim. Moreover, in *Kyle v. Morton High School*, 144 F.3d 448, 454 (7th Cir. 1998), the Court of Appeals found that "fair notice" exists when a complaint includes the operative facts upon which the plaintiff bases the claim. *See also Bennett v. Schmidt*, 153 F.3d at 518, 519 (7th Cir. 1998).[5]

Here, the plaintiffs complain of racial discrimination in employment and expressly state that the discrimination was perpetrated by the defendants under the color of state law. These allegations meet the two requirements necessary to state a claim under § 1983; and, these allegations give the defendants sufficient notice of the claims and grounds upon which plaintiffs' case is based. Therefore, defendants motion to dismiss Count II, plaintiffs' Section 1983 claim against the individual defendants in their individual and official capacities, is denied.

## CONCLUSION

IT IS THEREFORE ORDERED that:

1. The motion to dismiss all claims as barred by the *Massie* Decree is DENIED.

2. The motion to dismiss Counts I and II against IDOT as barred by the Eleventh Amendment is GRANTED.

3. The motion to dismiss Count II against the individual defendants is DENIED.

---

[5] In *Bennett*, an employment discrimination case, the court held that the plaintiff's allegation that she was not permitted to interview for a teaching position because of her race was sufficient notice. Specifically, the *Bennett* court found that this allegation provided sufficient notice of the plaintiff's complaint because it asserted racial discrimination in employment which is "'a claim upon which relief can be granted.'" 153 F.3d at 518-19.

Thus, Counts I and II survive against the individual defendants in their individual and official capacities; Counts III and IV survive against IDOT.

**ENTER:**

_____
**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**Dated: November 4, 2002**